The next argument will be in Estle v. IBM, No. 20-3372. Mr. Weber, whenever you're ready. May it please the Court, I have two brief opening points about Penn Plaza. First, the OWBPA, by its terms, applies to the waiver of, quote, any right or claim, end quote, under the ADEA. Given that plain meaning of that statutory language, it is highly implausible that the Supreme Court in Penn Plaza was holding that the OWBPA only applies to substantive rights. And even more unlikely that it would vary… If I could just interrupt you, why is that implausible? The Supreme Court held that it didn't include the right to arbitrate and it applied to substantive claims only. The holding in Penn Plaza is unequivocal. They expressly state what their holding is, and Your Honor is absolutely right. They held that the ADEA does not in any way prohibit binding arbitration, either pre-dispute or post-dispute. And we have never contested that. We have agreed to arbitration in this case. So that is a red herring in this case that the IBM keeps raising that we're somehow foreclosing that. But actually, Your Honor, under Section H, which is the section of the OWBPA that we're focusing on, not discussed, not mentioned in Penn Plaza, that's a post-dispute provision that only requires disclosures, unlike C, which is an absolute ban on prospective waivers, which is problematic. Can you raise the podium so that you're speaking more directly or raise the microphone so you're speaking more directly into them? Thank you. I'm sorry. How about if I get closer? Is that better? That's better. Okay. So our case is focusing on Subsection H, which is completely different than C. C had a sentence in Penn Plaza where they said that looks like that would conflict with our prior holding in Gilmer that binding arbitration is not prohibited by the ADEA. We don't contest any of that. We never have. So the only thing we're relying on is H. And if IBM had complied with H, they could have insisted on an individual arbitration action. So there is no tension here with the Federal Arbitration Act, as there was, obviously, in all the cases they're citing. So those cases are totally distinguishable on that ground. And the reason, Judge Park, I say it's implausible is the U.S. Supreme Court has made it very clear time and again that the focus in statutory interpretation is on the plain meaning of the words. And nobody would – I don't think any of us here would say the best way to convey only substantive rights is, quote, any right or claim. That would – you'd flunk out of writing class if that was your proposal. And so the U.S. Supreme Court, what it was doing, Your Honor, was responding, and it said that. And I think the district court and IBM keep not paying attention to the U.S. Supreme Court sentence. It begins with respondents incorrectly contend. And then the quote of substantive comes from the respondent's argument, which makes perfect sense because they're responding to respondent's argument. It nowhere is in the ADA. And I don't think the Supreme Court would ever be so disrespectful of statutory language to begin an interpretation of a statute by taking out the word any and putting in substantive. That just is not – the Supreme Court would never do such a thing. So it doesn't make any sense the way this has been interpreted. It's a very long decision, and the WPA is discussed for a couple sentences at the end of a single paragraph. There's no way the Supreme Court would bury such an important holding at the end of a paragraph. And it is describing in a quick way why it doesn't agree with a respondent's argument, which we're not making. We're not arguing that there's any substantive right. Maybe I'm just not getting it. I'm sorry, though. I don't understand your argument why Penn Plaza isn't controlling here. It just seems to me that the analysis that the Supreme Court provided about arbitration is – the question is whether that applies to collective action in this case. Right. And I'm not following why it doesn't. Right. So this is a Section H case, Your Honor, which does not – there's no tension between it and arbitration. Because all you – it's the same requirement for a contract that doesn't have arbitration. If you make the disclosures that Congress thought older workers needed to know before they could make an informed decision, then you can get a complete waiver that would include requiring arbitration and an individual action. So there's no tension here in the other statutes, the other cases. The statute, if interpreted the way the Petitioners were saying, would preclude arbitration or preclude an individual arbitration. We're not saying that at all. So Penn Plaza in no way addressed this issue because there's no – Let me ask you if I understand the point you're making or the issue. As I understand it, looking at the crucial passage of Penn Plaza, the Supreme Court said plaintiffs incorrectly argue that an individual employee must personally waive a substantive right. And the plaintiff had argued that it must be a substantive right.  Must waive a substantive right to proceed in court for a waiver to be knowing and voluntary. As explained below, however, the agreement to arbitrate ADA claims is not the waiver of a substantive right. Now, what I glean from that is that the plaintiff has taken the position in that case that Section 626F applies only to substantive rights. And then the Supreme Court proceeds to say, accepting that as a given but never treating it as an issue that needs to be decided. Does Section 626F really apply only to substantive rights or to all rights? The Supreme Court accepts the way the plaintiff characterizes it and simply says, yeah, well, an agreement to arbitrate is not the waiver of a substantive right. And so the Supreme Court, while it has said that it has said unquestionably or at least it has assumed that the ADA, that Section 626 applies only to substantive rights, it never treated that as an issue that needed to be decided because the plaintiff was conceding it. And so the Supreme Court simply took it as a given and didn't decide the question. It just treated it as if it's true. Nobody's contesting that. Yeah, I think that's the only reasonable way to interpret it because the Supreme Court begins by saying we're responding to an incorrect argument of respondent and they swat it away. And they decide that it is not a substantive right to bring a case in court, and we completely concede that. But for them to put the word substantive, to think that they were rewriting a statute openly like that, they would never do that. That is totally implausible, and Judge LaValle has an article about dicta. It's really hard to say that the Supreme Court was making a binding discussion about the OWBPA, any right or claim, when they never even quoted, they would never ignore the word any. Well, it seems to me that Supreme Court reasoning assumes that the statute does apply only to substantive rights, but it assumed it because the plaintiff conceded it, not because the Supreme Court treated it as an open question to be pondered and decided. The Supreme Court doesn't give any evidence of having raised the question whether it applies only to substantive rights or to substantive and procedural rights. It just, as the plaintiff was conceding it applies only to substantive rights and then saying, well, this is so important it's got to be considered substantive. The Supreme Court just accepted. I completely agree. I think that's the smart way to interpret it. It's what the Supreme Court said. They were responding to an argument, and they would have spent a lot more time looking at the actual statutory language. The only statutory language they actually quoted was Section C, which is problematic in an arbitration case. We're not relying on C. C is a pre-dispute provision, and ours is post-dispute. Layoffs, disclosures only occur post-dispute. There is no conflict with the Federal Arbitration Act. And so we think this is a plain statutory language case, and the decision should be reversed. I believe I saved two minutes for rebuttal. Yes, you have two minutes remaining for rebuttal. Thank you very much. Thank you. Ms. Lovett? May it please the Court, Tracy Lovett on behalf of International Business Machines Corporation. Judge Park, we agree with your reading of Penn Plaza. In our view, it establishes the rule of decision in this case. The Court held that Section 626F1's waiver limitations apply only to substantive rights, not to the right to bring a civil action in a judicial forum or the right under the Seventh Amendment to a civil jury trial. Judge LaValle, in response to your questioning about, you know, what was before the Court, was this an assumption, we agree with the district court that you should go back and look at the briefing. And I would commend to you, and these are the Westlaw sites, the pinpoint sites on Westlaw, the respondent's brief at 3, star 3, star 13, star 31, and star 36. Star 3 is the introduction. Star 13 is the summary of the argument. Star 31 is the argument about the right to a judicial forum. Star 36 is about the jury trial right. And what the petitioner, excuse me, the respondent is arguing in that case is that the arbitration clause is invalid because 626F1 requires rights to be waived individually. It has to be a personal waiver, and a waiver by a union is not an individual waiver. The petitioner, I would also commend to you the petitioner's reply brief, which is 2008 Westlaw 3851622 at star 16 and star 17. The petitioner responds to this argument by saying, no, no, no, rights means only substantive rights. And the right to a judicial forum and the right to a jury trial are not substantive rights. That's the analysis before the Court. That's the argument before the Court. When it says it's 259, it's a substantive right. And I look at the Court's insertion of the word substantive as meaningful. The Court is equating the term right with substantive right, and it's clearly quoting 29 U.S.C. 626F1. It's not citing the respondent's brief. And even if you don't like the textual analysis, even if you think it's not as clear as you would draft it, the Court is very clearly drawing the line in 14 Plaza. It's saying, look, substantive rights are within the scope of section 626F1. The right to a jury trial and the right to bring a civil action in a judicial forum, which is guaranteed under 6261, both of those rights are out. So the question before the Court, no matter how you read 14th and Plaza, is where on that line do collective actions fall? Do they fall closer to substantive rights, or do they fall closer to the right to a jury trial and the right to a judicial forum? I think that question is pretty clearly answered by the Supreme Court's decisions in Gilmer, Italian colors, and this Court's decision in Sutherland. In all three cases, the Court's considered the nature of a collective action and whether it's actually substantive. And in all three cases, this Court and the Supreme Court held that collective actions are not substantive rights for exactly the same reason why a judicial forum is not a substantive right, because you can vindicate the underlying rights guaranteed by the ADEA in an individual enforcement action. That's why collective actions aren't required. And this was the analysis in Sutherland. There's nothing that forces a litigant to opt in to a collective action. There's nothing that requires a litigant to bring a collective action in a judicial forum. That's because Congress determined that the individual enforcement mechanism was as effective as the collective action. That's the logic of 14th and Plaza, and it applies squarely in this case. There was a little bit of conflation, I think, in the appellant's argument about our arguments under the FAA and our arguments under 14th and Plaza. Our argument under the FAA is even if you disagree with us and you think this hasn't been decided by the Supreme Court and you disagree and you think that OBIPA actually covers and encompasses the collective action, you'd have a conflict between the Federal Arbitration Act and 626F1, the OBIPA, because if we learn anything from Stolt-Nielsen and Concepcion, it's that a party can't be forced into collective arbitration against their will. And in the reply brief, appellants are pretty clear that that's exactly what they seek here. They want to go to arbitration where, quote, not doing anything to the arbitration right, but require IBM to do so without the benefit of the collective arbitration waiver to which the parties expressly agreed. That's the conflict with the FAA. EPIC tells you that written agreement is, I think the Court's phrase was pretty absolutely guaranteed by the Federal Arbitration Act. To this, appellant has three answers, and I think it's worth taking a couple minutes just to tease through those because of the way the briefing fell, we didn't have an opportunity to reply. The first argument is that the OBIPA is a law of general applicability. But that was, and so it's a defense, a contractual defense that falls within the FAA Savings Clause. Well, that was true of the laws at issue in Concepcion and EPIC and in Lamps Plus, and the Court expressly acknowledged the fact that those laws were generally applicable. But the Court held that that didn't save the contractual defenses because they interfered with a fundamental aspect of arbitration, which is the right to bilateral arbitration, the right to individual arbitration. The same is true here. If appellant's reading of 626F1 is correct, then you have a transformation of the arbitration agreement into something that IBM did not agree to. Their second argument is that, and this is what I believe my brother counsel was alluding to, was that the disclosure requirements in OBIPA are merely conditions. They aren't an actual prohibition on a collective arbitration waiver. I think the line in the reply brief was, IBM just needs to disclose. And if IBM discloses, it can have its collective arbitration waiver. But here, too, that was the same factual setup in EPIC and in Italian Colors. In EPIC, the NLRA provision, which guaranteed concerted activities, applied only to employer-induced agreements. It did not apply to union agreements. It did not apply to collective bargaining agreements. So the condition was, if you want your collective arbitration waiver, just do it through the union. You can't do it through an employer agreement. But I think Italian Colors is even more telling and more on point. In that case, the Court was considering the effective vindication defense. And at the very end of its opinion, the Court says, if the effective vindication defense operated in the way the lower court says, you'd have judicial review of every arbitration agreement, and you'd have the courts giving green light or red light on arbitration. What did this arbitration agreement say that you rely on? Our arbitration agreement? Yeah. It says there's an express provision that there would be no I can grab it for you. This was the agreement and exhibit to the complaint. So if you wanted to pull the docket, it's docket one. I'm sorry. I don't have this right. Okay, here it goes. You agree that, and I'm going to do an ellipse in here. You agree that any and all legal claims or disputes between you and IBM under the Federal Age Discrimination and Employment Act, dot, dot, dot, will be resolved on an individual basis by private confidential final and binding arbitration according to the IBM arbitration procedures and collective action waiver. Then there is a carve-out, and the reason why we're in this court, there's a carve-out for any questions on the enforcement of the collective arbitration waiver shall be decided by court, not the arbitrator. So it's in there twice, but it's expressly requiring individual arbitration between the employee and IBM. So your point is with respect to the FAA that the arbitration agreement limits to individual arbitrations as opposed to collective arbitrations? Correct. Correct. And so you have to rewrite the agreement. And there's another provision. I just don't have it straight at my fingertips. It's more expressed about the collective action waiver, that you'd have to read that out of the agreement. And Concepcion and Stolt-Nielsen tell you you can't do that. But very quickly to this last point about Italian colors. So on that analysis, the 626 in Penn Plaza issue is simply irrelevant. You would get to this issue only if you disagree with us on 14 Penn Plaza. So if you read 14 Penn Plaza as not supplying the role. And vice versa. Correct. Correct. So the district court didn't decide this issue because it agreed with our interpretation of 626F1. And so you can affirm on that grounds. But this is if you disagree, you do have to go through the FAA analysis. And in our view, there's no clear and manifest intent within 626F1 to overcome the arbitration right. Thank you. Thank you, counsel. Mr. Weber, you're reserved two minutes for rebuttal. So on Penn Plaza, IBM admits they never quoted any right or claim. And there are sites to the brief below. I mean, when you read a Supreme Court decision, the Supreme Court said what it was responding to and quoted substantive right. So the ultimate authority on what they were doing is the decision itself, just like a statute. So I don't think you want to go into legislative history on that. So Penn Plaza, as the court has indicated, says they're responding to an argument, and that's why they put the word substantive in there. The idea that they put that in there and rewrote the statute in the first sentence of discussing is just totally contrary to everything the Supreme Court says about statutory interpretation. On the Federal Arbitration Act, it's just not true that we in any way were messing with their rights to bring to compel arbitration in an individual action. All they had to do was comply with H, which applies to contracts. I think there's no question from what the Supreme Court said that it was operating under the belief that the provision applies only to substantive rights. For purposes of swatting away that argument in Penn Plaza, but not for all future. I mean, it simply assumes that the statute applies only to substantive rights, and it says this isn't a substantive right. I completely agree. And so it's, in no way was it meant to be controlling in the future. So under the Federal Arbitration Act, there's no conflict here because the section H applies. If they had just done a regular contract here and left that arbitration, it still would be invalid because they didn't make the disclosure. So IBM is saying we put them in a, we're forcing them into something. We didn't. All they had to do was comply with H. Whether it's a regular contract or an arbitration contract, it is a generally applicable rule that Congress says we think you need to make these disclosures. Otherwise, it's essentially coercive or fraudulent. And so this is a generally applicable defense, totally different than all the cases. But you say in response to IBM's argument with respect to the arbitration agreement being limited to individualized arbitration. I'm sorry. We would, that would not be a problem if they complied with H. That we would admit that it's totally enforceable. But an arbitration agreement is not a super contract. It doesn't get around things that other contracts have to comply with. So in this instance, H just says you've got to make disclosures, and then you can get anything you want waived. And so they could have had their cake and eat it, too. They just didn't want to make these disclosures. But they can't get around that by having an arbitration agreement, Your Honor, just like they could with a contract. An arbitration agreement is not a super contract. It just can't be treated worse than a contract. This would be taking the Federal Arbitration Act and taking it a way mile further than the Supreme Court has ever done to strike down a disclosure requirement. They've never done that. As a matter of fact, I believe they've indicated that would be okay. That's not the same as banning it. It doesn't interfere with it. It doesn't disfavor it. It would be taking the Federal Arbitration Act and making it trump, basically put arbitration agreements above the law. Thank you. Thank you, counsel. We'll take the case under advisement.